May I please the Court? My name is David A. Rowe. I am the attorney for the petitioner. Mr. Rowe, there's not much amplification in here, so you might try to speak up a bit. Thank you. May I please the Court? My name is David A. Rowe. I'm the attorney for the petitioner. I would like to reserve two minutes for rebuttal at the end. In the case at hand, the government has jurisdiction. And I think it's important to take this, the context in which the BIA appeal arose, in that it was irrelevant regarding whether the petitioner in this case had committed a crime involving moral turpitude or not. In the case at hand, this arose before the Board of Immigration Appeals as a motion to remand. So whether or not he had committed the crime involving moral turpitude. Was the issue of moral turpitude raised before the BIA? I did not see it. I may have missed it. It was not raised. It was mentioned. Why is that issue exhausted? Why do we need to even consider it? Well, in the context in which the case came before the BIA, it was irrelevant whether or not a crime involving moral turpitude had been committed. It was ---- But that doesn't matter. I mean, the BIA mooted out the waiver issue, took the appeal. The appeal itself did not raise as an issue whether the crime was or wasn't one of moral turpitude or its consequence. Yes. I'm just asking you why, because it wasn't exhausted and we lack jurisdiction to hear unexhausted issues. Well, it was only required ---- it only became an issue once the case came upon the petition for review. The only time it was relevant to argue that issue would be here before the Ninth Circuit. Well, maybe that's true, but you still have to exhaust, don't you? Well, there wasn't anything to exhaust before this level. Okay. I think I'm misunderstanding the question perhaps. That's okay. Go ahead. In addition, as I mentioned in the optional reply brief, the Court has allowed amendment regarding that. I have argued on behalf of the petition that it was not a crime involving moral turpitude, and the record of proceedings at the previous levels did not establish it. I have a question about what constitutes a crime of moral turpitude. Yes. It appears to me that this crime categorically constitutes a crime of violence, but I don't ---- does a crime of violence also equal a crime of moral turpitude, or are they only sometimes overlapping? Does the question make sense to you? Well, I think in a crime of violence there is a requirement under, I believe it's 18 U.S.C. 16 for crime of violence. It would require a threat of force or actual force being used, actual physical force. Under the crime at hand, the California Penal Code, it doesn't necessarily require physical force or a threat of physical force necessarily. Well, for the sake of my question, I'd like you to assume to the contrary. I know you don't concede it, but let's assume that Penal Code Section 69 is a crime of violence. What is the relationship between the concept of crime of violence in the statute and the concept of a crime of moral turpitude? I would ---- it would be hard for me to cite an example where a crime of violence is not a crime involving moral turpitude. If this ---- in the case at hand, if this were an aggravated felony, which incorporates the concept of crime of violence, this individual, this petitioner would still be eligible for a waiver subject to the 212H section of the Immigration Act. But for the narcotics problem? Well, the argument is for the narcotics problems he doesn't need the waiver because these acts constituted acts prior to the ---- while he was a minor, he was still 18 years or younger. And as I cited regarding the FAM and the Title 20, there is an exception. As opposed to a waiver, there exists an exception where he, even with the admitted drug use, he could ---- he's still admissible for that reason. So he wouldn't even need the waiver. The criminal act would be waivable if necessary. And as I argued at the BIA level, as well as in the petitioner's opening brief, it may not even ---- it was black context in which the case arose at the BIA level, whether or not it was a crime of all remorse, herpetude, had no relevance. And that's why it wasn't heavily argued at that level. It only became an arguable issue once presented before the Ninth Circuit. The other, going into a little bit further as to what you were questioning regarding the use of controlled substances, within the FAM, the Title 20, it does specifically waive those admitted uses because he was under the age of 18 at the time. What it has to do, as I read the regulation, or as I read the manual, with applications for a visa, not with provisions for adjustment of status. Well, part of attaining adjustment of status is going through the visa process. That is the Form I-130 document that the U.S. citizen father had filed on behalf of the petitioner, his son. So that's the visa petitioning process. And then in conjunction with that, upon approval of that, he can then apply for his lawful permanent residence status. I mean, it is part of the process. Prior to INA, I'm sorry, Immigration Nationality Act, Section 245I, everybody, in order to attain their lawful permanent residence status, had to process through the consulate in their home country. The U.S. consulate or embassy in their home country determined that admissibility and admissibility issue. And that's where the Title 20 come into play. That was a consulate officer decision. And that's the interaction between Title VIII of the Code of Federal Regulations and Title 20 of the Code of Federal Regulations. And you still see a lot of reference to Title 20 in the context, for example, of becoming a permanent resident through the labor certification process because all the codes regarding becoming a permanent resident for labor certification purposes continue to be at Title 20 only. That would be the visa that's in that case. I would like to reserve the remaining time for rebuttal, if I could. Good morning. Alison Igoe with the Department of Justice Civil Division representing the Attorney General. The sole issue in this case is whether the petitioner who is removable was eligible for any form of relief. There is no question that Mr. Galvez was removable. He never contested that he was subject to removal. In fact, the notice to appear charged him on two separate bases, one of which is that he was found in the United States in violation of the law. Whether this is a crime of violence or not, I think is not necessarily relevant only because he was not charged with being removable on the basis of an aggravated felony. The question here is whether, even if, all of the errors that the petitioner suggests are he was actually eligible for any relief. The only relief the petitioner suggests he was eligible for is adjustment of status. And, Your Honor, as you pointed out, the problem this petitioner has is getting past the requirement for adjustment of status that he be admissible. He does not challenge the fact that he admitted to drug use, which is a bar to adjustment of status. He doesn't only have to prove that he could get a visa. There is a separate requirement. And, in fact, it appears the elements for adjustment of status appear on page 28 of the petitioner's brief. He has to show that he has applied for adjustment of status, which he did. He has to show that he is eligible to receive an immigrant visa. I don't contest that under the Foreign Affairs Manual, which is the manual that the Department of State uses to determine eligibility for visas, that he is eligible because the conduct to which he admitted occurred prior to his 18th birthday. But the statute, the INA, which is a separate statute and which is administered by the Department of Homeland Security, previously the INS, has a separate requirement. And he is admissible. And under the INA, 212a2aI, I believe it is, he is inadmissible because he admitted to conduct. It does not have to be a conviction. He admitted to conduct that is a violation of the controlled substances law. As a result of that, he is ineligible for a waiver under 212h because it is not a minor offense involving a small amount of marijuana. And so, therefore, he is not eligible for adjustment of status. He has conceded that he is removable. The only relief that he asked for was adjustment of status. It's clear that under the statute, he is not eligible for that. And so I would ask the Court to dismiss his case. The petitioner is, while it displays a fundamental misunderstanding of the roles of the Department of State and the role of Department of Homeland Security, while the Department of State regulates visas, the Department of Homeland Security has a separate responsibility for the border. And even in all situations in which someone is issued a visa, they have to come and present themselves at the border, and there has to be a separate determination as to whether the case, this gentleman, is not admissible. And so he's, therefore, not eligible for adjustment of status. If the Court has no further questions. I don't think so. Thank you. Mr. Rowe. Thank you, Your Honors. With respect to the Section 212 that Title 20 of the FAM interprets, it's exactly the same Immigration and Nationality Act. It's not as if there is a separate act. And it's actually the same section of law cited at 212A to capital A, little i, and capital I, and that's the codification according to the INA. Again, it's not a question. Even if an individual is found removable, they still have a right to request a form of relief. It's not that once he's found removable, he's barred from applying for any form of relief. And the allegations or the arguments in the briefs are that he does qualify for the form of relief requested, and if necessary, the 212H waiver, the form of relief being adjustment of status. And I believe that's all the time I have. Thank you, Your Honor. Thank you very much. And we'll next to your argument in the United States first follow-up. Good morning. Richard Rome, appearing for Mr. Butler. This case arises.
judges: Browning, Rymer, Graber